UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMONE DOMINIQUE HALL,

    Petitioner,                   Civil Action No. 18-CV-11074

v.

                                   HONORABLE MARK A. GOLDSMITH

THOMAS MACKIE,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Demone Dominique Hall, ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529, for which he was sentenced to serve 15 to 30 years' imprisonment. For the reasons stated below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Earlier that day, the victim was on a service call for cable installation. His manager was parked next to him, waiting for him to complete his work, when a man approached her vehicle from behind. She found it abnormal that the man was wearing a gray hooded sweatshirt and sweatpants, despite the fact that it was approximately 85 degrees outside. Finding the man suspicious, the manager drove her truck down the street, and then returned to park "nose to nose" with the victim's

1

truck. The man, however, approached her again, this time sticking his head and
hands through her open driver-side window, scanned her vehicle, and then asked
for a lighter to light his cigarette. The manager gave the man a lighter, and as he
walked away, she used her cell phone to take pictures of him.

After the victim completed his work, his manager and he parted ways, and he went
to a restaurant for lunch, where the robbery occurred. Although the victim was
unable to remember defendant's facial features and characteristics, he did identify
that defendant was wearing a gray hooded sweatshirt, gray sweatpants, and that he
was approximately six feet tall, with medium to light skin complexion. The
manager identified that same man who approached her earlier from security camera
footage taken outside the restaurant where the robbery occurred. Though the video
is not sufficiently clear to identify facial features, the manager stated that the man
in the video was wearing the same clothes, had the same weight and posture, and
the same height as the man who had approached her vehicle earlier that day. The
manager identified defendant as that man from a photographic lineup.

People v. Hall, No. 315691, 2014 WL 3705087, at *1 (Mich. Ct. App. July 24, 2014).

The manager testified at trial that that she took pictures of the man who approached her truck and was sure that the man was Petitioner. She testified that she remembered that "the man had a thinner jawbone, a wider forehead, a very thin mustache, thicker eyebrows wearing the gray hoody and the gray sweats is what I recall." She also remembered that there was a red shirt hanging out from under the gray hoodie." 3/5/2013 Trial Tr., Att. 3 to Rule 5 Notice, at 26, 28 (Dkt. 7-3). She further testified that the pictures and her recollections were consistent with the video footage taken at the restaurant prior to the robbery, and that she was "absolutely sure" about her identification of Petitioner because she was face-to-face with the perpetrator for two minutes when he approached her truck. Id. at 29-30.

Petitioner's conviction was affirmed on appeal. People v. Hall, No. 315691, 2014 WL 3705087 (Mich. Ct. App. July 24, 2014), lv. den. 859 N.W.2d 517 (Mich. 2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. There was only speculation that Defendant Hall was the same person who was depicted on the surveillance video committing the robbery. The

2

evidence was legally insufficient to support defendant Hall's robbery armed conviction and was against the great weight of the evidence.

II. The trial court's jury instruction with respect to flight from the scene of the robbery was unfairly prejudicial to the defense and effectively invaded the jury's province, denying defendant Hall his due-process rights to a fair trial.

III. The prosecutor appealed to the jury to have sympathy for the victim and asked the jurors to put themselves in the victim's "shoes." In making these improper appeals, the prosecutor committed misconduct which denied defendant a fair trial.

IV. The defendant-appellant was deprived of his federal and state constitutional due process rights where the evidence was insufficient to prove beyond a reasonable doubt that the appellant committed armed robbery.

V. The trial court abused its discretion by erroneously scoring offense variables 9 and 10 contrary to the evidence recorded.

VI. Appellant's constitutional rights to the effective assistance of counsel was violated.

VII. Appellant contends that the photographic lineup without counsel present violated his six amendment right to counsel and a fair trial when the lineup was conducted where he was the focus of the investigation.

VIII. Appellant's constitutional rights to due process [were] violated where the witness identification was improperly suggestive and had no independent basis.

IX. Substantial prosecutorial misconduct deprived defendant of a fair trial where the prosecution presented altered photographs to the jury to inference a false connection to the crime. Utilizing the alterations and presenting them amounts to falsification of evidence.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state

court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### III. DISCUSSION

**A. Claim # 1. The sufficiency of evidence claim.**

Petitioner argues that the evidence was legally insufficient to support his armed robbery conviction, and is against the great weight of the evidence. Petitioner argues that there was only speculation that he was the same person who was depicted on the surveillance video committing the robbery, because the victim could not identify anyone in the first photographic lineup and then identified another man in the second photographic line up as the individual who robbed him.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt"; the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-319

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. A federal court may grant habeas relief only if the state court decision

was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." Id.

Petitioner claims that there was insufficient evidence to establish his identity as the robber because the victim was unable to identify him from the photographic lineup, the surveillance video did not clearly depict him, and the sole evidence against him was the testimony of the victim's manager, Shari Susko.

Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." Byrd v. Tessmer, 82 F. App'x 147, 150 (6th Cir. 2003) (citing People v. Turrell, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)).

Shari Susko testified that she was working on special assignment on July 3, 2012, to accompany the technicians working in the field, because there had been a string of "armed robberies and smash and grab robberies." She arrived on the 17000 block of Forrer around 9:30 a.m. and parked her truck behind Martin, who was already working when she arrived. She saw "a gentleman approaching my vehicle from the passenger side rear," who in 85-degree weather "was wearing a thick gray hoody and thick sweat pants, several layers underneath, so you could see, like, a red T-shirt underneath." Susko pulled her truck away from the spot as the man approached.

6

She circled around and then parked on the adjacent side of the street "nose to nose with the tech this time." The man again approached Susko's truck. She did not see him as he approached the driver's side window. The man put his face and hands inside the vehicle and then asked her for a lighter. Susko "maintained visual contact with him at all times because I noticed his eyes scanned my truck…and his hands were shaking." 3/5/2013 Trial Tr. at 6-12.

When the perpetrator walked away, Susko took numerous pictures of him. Susko testified that People's Exhibit 2, depicts an individual wearing "a gray hoodie with a white emblem on the back of it, a red t-shirt and then gray sweat pants." Susko later viewed the surveillance video from the restaurant, following the robbery, and told the police that the man in the video was the same man that approached her earlier and he had the "same exact clothing, same exact weight or posture." Id. at 25-30. Susko also identified Petitioner in the photographic lineup as the man who approached her and the man in the surveillance video. Id. at 26, 31, 148.

The Michigan Court of Appeals relied on the testimony of the manger, who was approached by the perpetrator, in rejecting Petitioner's claim as follows:

> Defendant argues that the manager's testimony was incredible because defendant's facial features were not visible in the security camera footage. However, as discussed, the manager had an ample opportunity to observe the man who approached her vehicle, including his height, weight, posture, skin color, and clothing, and this Court has made it clear that we will not disturb the trier of fact's credibility determinations regarding identification testimony. Therefore, we conclude that sufficient identification evidence existed to support defendant's armed robbery conviction and it was not against the great weight of the evidence.

People v. Hall, No. 315691, 2014 WL 3705087, at *2 (Mich. Ct. App. July 24, 2014).

The manager's testimony, if believed, would be sufficient to sustain Petitioner's conviction. Moreover, attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. See Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond

7

the scope of federal habeas review of sufficiency of evidence claims. See Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000). To the extent that Petitioner challenges the credibility of the manager, he would not be entitled to habeas relief. See Tyler v. Mitchell, 416 F.3d 500, 505 (6th Cir. 2005).

The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." Brown v. Davis, 752 F.2d 1142, 1144 (6th Cir. 1985) (internal citations omitted). In the present case, Susko unequivocally identified Petitioner at trial as being the person who approached her vehicle prior to the robbery and identified Petitioner in the surveillance video taken during the robbery later at the restaurant. 3/5/2013 Trial Tr. at 31. This evidence was sufficient to support Petitioner's conviction for armed robbery. See Brown v. Burt, 65 F. App'x 939, 944 (6th Cir. 2003).

In addition, there was strong circumstantial evidence which linked Petitioner to the crime. Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. Johnson v. Coyle, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations omitted). Identity of a defendant can be inferred through circumstantial evidence. See Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

In addition to the manager's testimony, there were the pictures taken before the robbery of the perpetrator and the surveillance video taken at the time of the robbery from outside of the restaurant at the time of the robbery. There was additional circumstantial evidence linking Petitioner to the robbery. Days after the robbery, police officers located a vehicle matching the description of the vehicle that had been used by the perpetrator during the robbery. A man was seen sitting in the driver's seat. Officer Robert Avery testified that when he went to investigate, another man, matching the description of the robber, exited a nearby building. Upon seeing Avery,

8

the man ran and was later apprehended. This man was identified as being Petitioner. 3/5/2013 Trial Tr. at 110-111. The fact that Petitioner ran from the police could be used as proof of his involvement in this crime and admissible to show consciousness of guilt. See, e.g., United States v. Dorman, 108 F. App'x 228, 242 (6th Cir. 2004).

Because there were multiple pieces of evidence to establish Petitioner's identity as the perpetrator of the robbery, the Michigan Court of Appeals did not unreasonably apply Jackson v. Virginia in rejecting Petitioner's sufficiency of evidence claim. See Moreland v. Bradshaw, 699 F.3d 908, 919-921 (6th Cir. 2012).

To the extent that Petitioner argues that the verdict went against the great weight of the evidence, he is not be entitled to relief.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. See Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); Dell v. Straub, 194 F. Supp. 2d at 648; see also Artis v. Collins, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. Cukaj, 305 F. Supp. 2d at 796; see also Crenshaw v. Renico, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. Dell, 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict Petitioner of this crime, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. Id.

Petitioner is not entitled to relief on his first claim.

### B. Claim # 2. The flight instruction claim.

Petitioner alleges that the trial court denied him a fair trial by instructing the jury that it could consider flight as evidence of guilt.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977). The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. Jones v. United States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency, or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. Waddington v. Sarausad, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. Id. at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. See Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008); California v. Ray, 519 U.S. 2, 5 (1996).

Petitioner claims that the judge's instruction violated his right to present a defense because it undercut defense counsel's argument to the jury, in which he challenged the credibility of Shari Susko's identification of Petitioner.

The trial court judge initially instructed the jurors that the prosecution had the burden of proving Petitioner guilty beyond a reasonable doubt and "the defense is not required to prove innocence or to do anything." 3/6/2013 Trial Tr., Att. 4 to Rule 5 Filing, at 37 (Dkt. 7-4). The judge also instructed the jurors that they could consider the evidence of flight, but that "[t]his evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows that the Defendant had a guilty state of mind." Id. at 45.

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. Johnson v. Burke, 903 F.2d 1056, 1062 (6th Cir. 1990) (internal citations omitted). Thus, the giving of a flight instruction did not violate Petitioner's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations as to whether Petitioner did, in fact, attempt to flee the scene and if so, what state of mind such flight evinced. See Burton v. Renico, 391 F.3d 764, 778 (6th Cir. 2004); see also U.S. v. Carter, 236 F.3d 777, 792 n. 11 (6th Cir. 2001) (not an abuse of discretion for the district court to give a flight instruction, though defendant may have had a reason to flee from officers other than guilt of the criminal charge, where the instruction stated that evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment).

The jury instruction in this case did not undercut Petitioner's defense because it merely instructed the jurors that flight could be considered as evidence of guilt. Petitioner is not entitled to relief on his second claim.

**C. Claim # 3. The prosecutorial misconduct claim.**

Petitioner next claims that he was denied a fair trial by prosecutorial misconduct based on comments that the prosecutor made during closing argument.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004) (citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly, 416 U.S. at 643-645. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Harrington, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct by appealing to the jury to have sympathy for the victim and by asking the jurors to put themselves in the victim's shoes. Petitioner also alleges that asking the jurors to "put ourselves into the mind of an armed robbery victim" was improper. The Michigan Court of Appeals rejected the claim as follows:

> At the outset of its closing argument, the prosecutor stated that "[b]eing robbed at gunpoint is everyone's worst nightmare." Defendant, in a conclusory manner, argues that this statement was improper because it was intended to incite sympathy for the victim. See Dobek, 274 Mich.App at 80 ("It is improper for a prosecutor to seek the jury's sympathy for a victim."). Because defendant failed to object to this statement, we review this unpreserved claim for plain error affecting defendant's substantial rights. People v. Unger (On Remand), 278 Mich.App 210, 234–235; 749 NW2d 272 (2008). When viewed in context, the prosecutor used the statement to open her closing argument in an attempt to argue that generally, being the victim of an armed robbery is an unwanted experience, and thus was not an attempt to incite sympathy. The statement was brief, and given that the trial court instructed the jury that the attorneys' statements were not evidence and that it should not convict based on sympathy, we cannot conclude that the claimed error denied defendant a fair and impartial trial. See id. (noting that jurors are presumed to follow the trial court's instructions, which are sufficient to cure any prejudicial effect of an improper prosecutorial statement).
>
> Defendant also argues that it was impermissible for the prosecutor to state "we need to put ourselves into the mind of an armed robbery victim." As defendant correctly discusses, generally, prosecutors are prohibited from asking jurors to place themselves in the position of the victim. People v. Cooper, 236 Mich.App 643, 653; 601 NW2d 409 (1999); People v. Leverette, 112 Mich.App 142, 151; 315 NW2d 876 (1982), overruled on other grounds by People v. Wakeford, 418 Mich. 95, 110–113 (1983). Although this statement, on its face, is prohibited, when viewed in context the prosecutor's argument was proper. The prosecution was addressing the fact that the victim could not identify defendant as the man who robbed him due to his fearful state of mind at the time of the robbery. The statement was a proper argument in favor of the victim's credibility as a witness, in that although the victim could not identify defendant as the man who robbed him, his other testimony regarding defendant's clothing was still reliable. The statement was not an invitation to the jurors to put themselves in the victim's situation for the purpose of inciting sympathy for him; rather, it was an attempt to explain the victim's inability to identify defendant. Further, as discussed, any prejudicial effect of the alleged error was cured by the trial court's instructions.

People v. Hall, 2014 WL 3705087, at *3.

Although the prosecutor's remarks could have been seen as improper, they were made to support the victim's credibility as a witness and in an attempt to explain why the victim failed to identity Petitioner as his assailant. Petitioner is not entitled to habeas relief on his claim. Moreover, the prosecutor's comments, even if they were an attempt to invoke sympathy with the jury, would not entitle Petitioner to habeas relief because the remarks were relatively isolated, were

13

not extensive, and were only a small part of the closing argument that focused on summarizing the evidence. Byrd v. Collins, 209 F.3d 486, 532 (6th Cir 2000). This portion of Petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision See 3/6/2013 Trial Tr. at 36; Cockream v. Jones, 382 F. App'x 479, 486 (6th Cir. 2010); see also Welch v. Burke, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999). The Court rejects Petitioner's prosecutorial misconduct claim.

### D. Claims ## 4-9. The procedurally defaulted claims.

Respondent contends that Petitioner's remaining claims are procedurally defaulted because Petitioner raised them for the first time on post-conviction review and failed to establish cause and prejudice, as required by Michigan Court Rule 6.508(D)(3) for failing to raise these claims on his direct appeal.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-751 (1991). If Petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-480 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at

trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise his claim on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See Guilmette v. Howes,

15

624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. Id.

The Wayne County Circuit Court judge rejected Petitioner's post-conviction claims, because Petitioner failed to show cause and prejudice, as required by Rule 6.508(D)(3), for failing to raise the issues on Petitioner's direct appeal. See People v. Hall, No. 12-007551, Slip. Op. at *5. Because the trial court judge denied Petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's remaining claim are clearly procedurally defaulted pursuant to Rule 6.508(D)(3). See Ivory v. Jackson, 509 F.3d 284, 292-93 (6th Cir. 2007); See also Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005). The fact that the trial judge may have also discussed the merits of Petitioner's claims in addition to invoking the provisions of Rule 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. See Alvarez v. Straub, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's fourth through ninth claims are procedurally defaulted.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default for failing to raise these claims on his appeal of right.[1] Petitioner, however, has not shown that appellate counsel was ineffective.

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. See Guilmette, 624 F.3d at 291; Hicks v. Straub, 377 F.3d 538, 558, n. 17 (6th Cir. 2004). However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

16

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

Id. at 463 U.S. at 754. The Supreme Court has subsequently noted that:

> Notwithstanding Barnes, it is still possible to bring a Strickland [v. Washington, 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

Smith v. Robbins, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. at 536 (quoting Barnes, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. See Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed an eighteen-page

17

appellate brief raising the first three claims raised by Petitioner in his petition.[3] Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Wayne County Circuit Court judge in rejecting Petitioner's post-conviction claims and by the Assistant Michigan Attorney General in the answer to the petition for a writ of habeas corpus, the claims that were raised by Petitioner in his post-conviction motion were not "dead bang winners." Because Petitioner's post-conviction claims were not "dead bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise his claims on direct review. See McMeans v. Brigano, 228 F.3d at 682-683.

In the present case, Petitioner has failed to allege any reasons to excuse his various procedural defaults. Because Petitioner has not alleged or demonstrated any cause for his procedural defaults, it is unnecessary to reach the prejudice issue regarding his defaulted claims. Smith, 477 U.S. at 533. Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider Petitioner's fourth through ninth claims as grounds for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's procedurally defaulted claims on the merits. Malcum, 276 F. Supp. 2d at 677.

Petitioner's fourth through ninth claims are procedurally defaulted.

---

[3] See Defendant-Appellant's Brief on Appeal. (Dkt. 7-8).

## IV. CONCLUSION

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the Petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas

a certificate of appealability may only be granted if Petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id.

## V.  ORDER

For the reasons stated above, the Court denies the petition (Dkt. 1), denies a certificate of appealability, and grants permission to proceed in forma pauperis on appeal.

SO ORDERED.

| | |
|---|---|
| Dated:  May 8, 2019<br>    Detroit, Michigan | s/Mark A. Goldsmith<br>MARK A. GOLDSMITH<br>United States District Judge |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 8, 2019.

s/Karri Sandusky<br>Case Manager